Case number 22-1568 et al. Danny Schieber, appellants, v. United States of America. Mr. Schreiber for the appellants, Ms. Mahan for the appellate. Good morning, your honors. May it please the court. I'm Norm Schreiber. I'm here together with my colleague, Mark Zell, and Steve Rodd, who represent the appellants in these consolidated appeals. I'd like to reserve three minutes. I'd like to split up my discussion today into two parts. First of all, I'll briefly discuss what we assert is the incorrect application of the APA by the courts below, by the five district courts below, five judges below. And concluding, I will discuss why we posit that a more correct standard, correct application of the APA would have led to a different conclusion. The real question is whether the district court had jurisdiction at all. Well, some of the, yes, many of the district courts, several of them, three, ruled that there was a lack of jurisdiction under the political question doctrine. However, I will relate to that, the underlying theory that all the district courts applied in dismissing the case that the treaty itself did not provide for a private cause of action. Some district courts found that that fact results in dismissal under 1231. Some of them found that fact results in dismissal under 70181. However, that type of analysis for APA review in our position is incorrect. We know, for example, that APA review… Well, the statute is 1331. That's the statute, the underlying statute of jurisdiction. And what is the language in that statute you say gives jurisdiction over this country? That the laws and treaties of the United States, that as long as the cause of action rests in the law and treaty of the United States, jurisdiction rests. And no district court ruled that jurisdiction was lacking under 1331. The district courts that did render a decision on jurisdictional grounds ruled that these claims were barred under the political question doctrine. Again, though, they applied this analytical framework that focuses, fixated on the status of the agreement under domestic law. And they focused on whether this agreement was self-executing or whether it provided a private cause of action. However, the analytical framework is muddled in at least two respects that I can see. One is people speak loosely and confuse the concepts of non-self-execution and no private rights and no cause of action. Another is a debate over whether the political question doctrine and treaty questions go to jurisdiction or the merits. But putting all of that aside, Holmes versus Laird still specifies a rule of decision that if the treaty or executive agreement itself forecloses review, the courts shouldn't review. And we can debate till the cows come home whether that's jurisdictional or merits. But what undercuts that rule of decision such that we just wouldn't apply it? You know, at most we say, well, we thought it was jurisdictional, but it really goes to the merits, which is something we've done all the time as courts get more rigorous about classifying things as jurisdictional or not. I have several responses to that. My first is that Holmes versus Laird did not involve an AP Act. The plaintiffs in Holmes versus Laird were bringing their claims directly under an agreement. Nothing in their claims were based on the AP Act. It said judicial intervention is foreclosed. Sorry? It said judicial intervention is foreclosed. Yes, it did say that. But, again, the AP Act was not invoked in that case. And in Holmes versus Laird, this court commented towards the end that had plaintiffs there formulated their claims differently, based on certain actions that the United States took upon themselves in executing that agreement, the result would have been different. Holmes versus Laird specifically left that question open and discussed what would be the case, for example, if plaintiffs brought their claims on how the United States acted in executing that agreement towards the end of the decision. And that's very similar to what we're doing here in these cases. The plaintiffs are not bringing any claims that the U.S. government violated the treaty. The plaintiffs are bringing claims that post-execution, as the government began adjudicating individual claims, the decisions were not based, were arbitrary and capricious based on the facts in the record. That is not what happened in Holmes versus Laird. You are therefore relying on the APA, right? Correct, Your Honor. Now, if we are looking to the APA, as opposed to pretty close to court jurisdiction, it requires a final order for us to be reviewing. Is there an order here in the sense used in the APA? Yes, Your Honor, there is a final order. What is the final order we're reviewing? Each plaintiff received a written final order by the agency, by the State Department, denying their claims. That's not an order issued in carrying out the laws of the United States. As Judge Gatsas was suggesting, everything here comes out of a treaty. You don't have an order of the sort contemplated by the APA, do you? Respectfully, I think the APA does not carve out an exception for an order of the sort. No, no, no, it doesn't carve out an inclusion. I'm suggesting it's not including what's done in the course of carrying out a treaty obligation as opposed to making an order decision concerning the laws of the United States. This case is very unique in the fact that the State Department did not just make this order an exception. It implemented this agreement in a very detailed manner. It created its own forms. There are certainly internal policies. The administrative record has not been filed in this case, so it's hard to discern. But this is not like any other case that has, in my research, I have not found anything similar to this type of action. And therefore, our position is that this decision by the State Department is a final agency action subject to the APA, and the government has not raised this issue. The government has not claimed there is no final agency action. In fact, no one, I see I'm running into my time here, but no, not even the courts. The district courts did not say that the APA, the elements of the APA, a final agency action and a brief plaintiff was not satisfied. Instead, the district courts… I don't think the government has ever conceded that the APA is applicable in the sense… I'm sorry, Your Honor? I don't think the government has ever conceded that the APA grants the… No, the government has not, however, raised any argument that the essential elements of APA, of the APA cause of action are not satisfied. The government, and even more so… That isn't the issue, whether they're satisfied or not. Why would the government raise that when the government is saying that it's not safe to review under the APA? I agree with that, Your Honor. You're right. The government has held their position. The government's position, and even more so on appeal, is that that issue should not be raised. That there is a more fundamental issue in the fact that the agreement does not create a cause of action. And that you can't use the APA to end run that limit on the executive agreement. Yes, Your Honor. They rely, yes, the government and the courts will rely on this court's decision in Nicaragua that ostensibly holds that the APA can't override or bypass this issue. However… Well, Nicaragua was before Steelco. I'm sorry, Your Honor? Nicaragua was before Steelco. Oh, correct. And Nicaragua is very distinguishable in a lot of ways in this case. But as far as the passing over the jurisdictional question, Judge McIver wrote that before Justice Scalia wrote Steelco, saying don't pass over the jurisdictional issue. That's true. And if you look closely at Nicaragua, it does not stand for the proposition that the government is offering. Nicaragua states that it does not discuss private causes of action and that the agreement needs to contain a private cause of action. Nicaragua has very specific language that the APA review needs to be based on domestic norms. And the sole authority in Nicaragua for that proposition is an administrative law treatise by Davis, Chapter 28. That treatise itself, that chapter is under 701. It's discussing reviewability under Section 701. It's not some abstract principle or categorical exception to APA review for international agreements. The government is correct that in its latest filing, our supplemental authorities, the government is correct. There are many, many of these executive agreements. We are not asking here that there is some categorical review, categorical permission for APA review on executive agreements. This case is very specific. Again, I cannot find any case where this fact pattern, where there is such specific implementation and specific judicial adjudication of individual applications, which should be subject to APA review. You don't have, as far as I can tell, you don't have a single case in which the APA has been used as a vehicle to adjudicate compliance with a treaty or an executive agreement that creates no judicially enforceable rights. Yes, it was difficult finding a case like that. I would see it. However, there is some case law suggesting that judicial APA review is available to challenge agency actions pursuant to executive orders. You have a law review article. And a law review article. And on the other side is HOMS, Nicaragua, deletory. Yes. A fair amount of authority. Okay. Yes, they have that. Deletory, however, again, in our view, misapplies Nicaragua in making this categorical exception to APA review when the international agreement or executive agreement does not provide policies of action. To rule on, to make such a categorical exception just to immune agency actions for every decision they take under an executive agreement, these are thousands of agreements out there. I'm curious because I get that the agreement is non-self-executive. But Congress has executed it. And when there is an agreement where a foreign government deposits monies into the U.S. Treasury and an agency, here the Secretary of State, normally the Secretary of State in international agreements, I would assume, has an obligation to make payments that are due to claimants. And so I'm not sure why we're spending all this time focusing on this as if it's just an agreement that's never been executed. This one has been executed. And so then it would seem to me your argument would need to be that the APA review is on the statute that executed the agreement. That would certainly be a commonplace use of the APA. But you haven't argued that here. We haven't articulated the argument in that fashion. However, in our briefs, we do emphasize the fact that the agency has implemented this agreement under its authority. So it's implemented there. But what matters, I understand it's done its notice of rulemaking for the forum. But I'm making a different point, which is that treaties are non-self-executed unless Congress executes them, and particularly ones that involve claims for money out of the U.S. Treasury. Even the Senate alone can't decide that. That requires action of both the House and the Senate through the legislative process. And you have that here. But I haven't heard any arguments about that. Yet that seems to me not covered by any of the cases that are cited here, and instead covered by Supreme Court cases that have, in fact, exercised jurisdiction under 2668A and other statutory claims settlement procedures without any political question problem, and allowing people to bring legal challenges to the distribution of money where these statutes have executed these foreign claim settlement. It certainly lends itself to suggest that this agreement may be executed. We've got a Supreme Court case, Mellon, that says lawsuits can be brought challenging the Secretary, I think it was Secretary of State there as well, distribution of funds pursuant to 2668A. And that seems right where we are. The difficulty for me is that I haven't heard any argument that that statute is what you're trying to enforce through your APA action. The statute itself, the government, we predict, would argue that it does not provide a private cause of action, and we think we would still be hearing today. Well, they'd have problems since the Supreme Court has said that. And the agreement itself would also, under this case, the Supreme Court's jurisprudence as well, would have to provide a private cause of action still. When an agency normally, and this is what I haven't heard here, normally if you have a federal statute that an agency implements, then the APA gives you a cause of action for challenging the agency's implementation of that statute. You don't have to look back at the agreement, do you? Well, I think that's pretty much the argument that we've been making in our briefs, it's just articulated differently. Well, it's very much different to articulate when a statute has executed an agreement that has otherwise not executed. We didn't say that the statute itself executed this agreement, but the statute was before or prior to the execution of this agreement. The agreement was made pursuant, maybe, to the statute. But if the end result is that this court feels that the actual agreement was executed, well, I think the result is the same. Well, then I think, because normally the way the APA works is when someone says an agency action is arbitrary and capricious, as you have argued, or contrary to law, that decision is analyzed by courts by reference to the statute that authorized agency action. I wasn't clear from your briefs, and I'm sorry if it's my misunderstanding. What in 2668A tells you that this action was arbitrary and capricious? It would be hard for a court to apply any judicial management standard law in 2668A. However, that is the importance of the agreement, because the agreement itself provides the substantive laws, the substantive standard, I would say, to adjudicate the individual claims. Just to rely on 2668A, I believe, would cause certain issues. I'd have to view it again, but it would cause certain issues in applying the law, because it's a very broad statute. Well, that's what I'm trying to understand is how it works. So in 2668A, which is a statute that executes claim settlements by authorizing the Secretary of State to make determinations of what to do to a claimant and then directing the Secretary of Treasury, who's holding the money, to release the money to whomever the Secretary of State has said the money is due. That's all it says. But it can apply to this non-self-executing treaty just like it did the one in the Mellon case. But the question that I just don't know is, in doing that, when a statute executes a non-self-executing agreement like this, does that then make the terms of the agreement itself law? Do they get imported into 2668A? Or do you just have to look within the framework of 2668A, which you said doesn't have those types of specifics? Thank you for zoning me into the issue. I believe the answer to that is in slush. It's this Court's decision in slush. I think the proper model is that, yes, we take this approach that the statute itself is the basis for the review, and it would incorporate the substantive terms of the treaty to allow for a substantive judicial review on those actions. The treaty itself would provide the Court with the standards to review the claim. Like in slush, I believe that was a prisoner transfer treaty. The Court there had no issue in seeing that the non-self-executing treaty was implemented by the underlying statute, and it applied those substantive terms without making any rulings on whether the actual agreement made or applied the cause of action. Did the treaty in slush have a provision that said the exclusive remedy for resolution of disputes involving the enforcement of this agreement will be between the two countries, non-judicial? I don't recall offhand it had that. Because that would be incorporated in two. Correct. The answer is no. If Your Honor is suggesting that this agreement is different because it does have Article VIII, which is an exclusive jurisdictional dispute resolution, our answer is in our briefs, and we think that that is through government. The government would not apply to post-implementation by the agency. So your position is even if all of this executive agreement plus 2668 were enacted as a single federal statute, you don't think that statute would preclude judicial review under Article VIII? No, Your Honor, I do not. How does your claim here possibly not involve a dispute arising out of the interpretation or performance of the agreement? The dispute may arise out of the interpretation of the agreement or the implementation. But again, the question is the scope. Who are the parties to that? Your theory is that the Secretary was bound to accept the statements made in the affidavit or form of written undertaking as to nationality or statelessness. That might be right or wrong, but it is a question about interpretation of the agreement. Yes, but Article VIII, however, does not necessarily apply, or it should not necessarily apply, to post-implementation. Didn't it say any dispute? Didn't the word use any dispute? Any dispute, yes, Your Honor. Any is the… Any, and our position is that any dispute between the governments, which can happen in a variety of situations. Take, for example, Your Honors, if the State Department… But the word between the governments are not in there. I'm sorry? The word between the governments is not in there. No, Your Honor, it's not. But the clear terms in our position, the clear terms of that, and that's how the parties in our positions that the parties intended are only to apply between government to government. Similar treaties, Your Honors, ex-siege between the United States and France and Germany, although they also contained these types of provisions, but they also allowed, although not in the United States, Europe, they allowed for a… In those countries. And there's no reason to believe that the State Department, when it executed this treaty, also did not, based on APA, the background of the APA, did not feel that an individual applicant would be able to challenge their decisions in implementing this agreement under the arbitrary and capricious standard. SLUS is your best case, but the implementing statute in SLUS seems to me very different from 2668, which I think your theory has to be that 2668 implements this agreement, reasons Judge Millett was suggesting. But I looked at the statute in SLUS, and it's quite detailed. It specifically authorizes the Attorney General to act as the authority referred to in the treaty, and it specifically incorporates the substantive standards of the treaty into the statute. And then, given that backdrop, we said the statute incorporates the treaty. I mean, we don't really have any of that in 2668. It's just a direction for the Secretary, Treasury holds the money, State adjudicates whatever State adjudicates, and then there's an appropriation for the money to get paid out. It seems to me completely different. Yes, Your Honor, the statutes are not the same. However, for purposes of the APA, there's nothing more than what 2668A requires. It's true that SLUS, the underlying statute, the authorizing statute, was much more detailed and specific to those agreements. Although, even in SLUS, it does not discuss the individual treaties. It gave broad authority to execute these treaties. It didn't discuss that specific treaty, which I believe was between the United States and Canada. The statute is not specific to that one treaty, but it incorporates treaties, specifically incorporates treaties like there was one with Canada and one with Mexico. And again, I think for purposes of the APA review, for getting past this, what the government considers a threshold issue, nothing more is needed than the government's own actions in implementing it. It shouldn't be anything more that's required for purposes of the APA review. And you think a bare-bones statute like 2668, just making the appropriation and assigning responsibilities between State and Treasury, can sensibly be read to override? Suppose we think Article 8 would govern if it were in a statute. Do you think 2668 can sensibly be read to override that preclusion? Well, it's not just 2668. It's the whole program that the State Department implemented. It didn't just start doing this. In fact, it implemented a whole judicial process to determine these claims. It created forms. Again, the administrative record is not before us, and it was not submitted in the district court. But there were internal policies. There must have been internal policies on how to implement this. And this is, for APA review, this would have been more than sufficient to give the court, the district court, standards of review, how to adjudicate this properly. And in adopting the form, the processes, the decision-making rules and authorities internally, whatever they are, that was part of how the United States performed its duties under this agreement? Sorry? That was part of how the United States – that's part of how the United States performs its duties under this agreement, is developing that whole scheme. Yes, the agreement specifically calls for it. Great. Any further questions? Thank you very much. We appreciate it. We'll give you some time for rebuttal. Ms. Milland? I'm very sorry to do this to you. Can I just ask you – if I didn't – if I missed it, please tell me. I didn't see the words political question anywhere in your brief. Did I miss it? Your Honor, you did not. We are not contending that there is a political question presented in this appeal. And the reason for that is that as plaintiffs' argument and oral argument and their reply brief has clarified, we take their – the only argument they're making to be that the terms of this agreement were somehow domesticated or incorporated into U.S. law, and that is that U.S. law that they are attempting to enforce under the ADA. And we don't think there's a political question implicated in addressing that issue, which is sort of well within the judiciary's traditional exercise of authority and implementation. Thank you. I'm sorry I didn't start you off without letting you get the first word in. Jurisdiction comes first. You did ask us to apply Holmes v. Laird, which is cast as a political question case. Your Honor, it was not clear at the outset of this case whether plaintiffs were, for example, challenging the terms of the agreement itself, challenging the State Department's implementation of that agreement, the wisdom of the criteria developed. But we think it's made clear in the reply brief, as I mentioned in response to Judge Millett's question, that the only claim that plaintiffs are pressing now is that the terms of the agreement have been somehow incorporated into U.S. domestic law. And as we said, we think that the judiciary has the tools to answer that question, and that doesn't sort of squarely implicate what was at issue at Holmes, which in that case, the court was being asked to consider whether West Germany had violated the terms of an international agreement and whether that violation in turn relieved the United States of its obligation to comply. So we think the question is framed slightly differently in Plaintiff's reply brief and Plaintiff's presentation here today. You do seem to be, in your brief, running away from deciding jurisdiction as opposed to deciding 12B6. The district judges, some of them at least, went both ways. You're not abandoning the notion that we don't have jurisdiction because of political questions, are you? Your Honor, I think the claims as elucidated through Plaintiff's reply brief and here today, we think are a different set of claims that don't implicate the political question doctrine at the outset in the complaints and in the district court. So you are walking away from it, given the nature of their claims? In this appeal, yes, Your Honor, as those claims have been clarified. In the district court, as I stated, I think there was some confusion as to whether plaintiffs were challenging what precisely their theory was, whether they were challenged the implementation of this agreement in the abstract, whether they were challenging the wisdom of the terms in the agreement. And all of those may have presented political questions and would have been more squarely within the terms. So you are now abandoning the political question position? Your Honor, we think the issue presented on appeal to this court is not a political question. Do you disagree? Put aside the label political question. Do you disagree with the statement of law in homes that if the treaty itself provides for an exclusively non-judicial mechanism of enforcement, then the courts can't review questions subject to enforcement and application and interpretation of the treaty? Your Honor, I don't disagree with that concept, and I think that that concept has been elucidated over the years in cases like Medellin in the Supreme Court, cases like Rodriguez from this court, all of which discuss this idea that when there is a specific non-judicial or diplomatic recourse that's specified in an agreement, that that's powerful evidence that the parties that entered into that agreement internationally did not intend to incorporate its terms into domestically enforceable law. Sorry, you keep interrupting me when you want to say something. No, no, it's okay, Your Honor. I was going to turn to sort of the theories that plaintiffs have for how the terms of this agreement were incorporated. Well, the other thing that your brief doesn't cite anywhere is 2668A, which seems to me to be sort of this cross-the-board execution of otherwise non-self-executing agreements about sort of foreign claims to money deposited in the U.S. Treasuries. When the U.S. does an agreement and does it, having come up with lots of different countries and lots of different situations, it executes it. Now, as Judge Katz has said, and just looking at the statute itself, it seems to do so only in the very narrow sense. What it most obviously does first and foremost is execute in the sense that nobody can pay money out of the Treasury unless it's authored by statute. And it certainly authorizes that and authorizes the Secretary of State, upon identifying a claimant that's due, to have the Secretary of Treasury release it. The Secretary of Treasury doesn't get in trouble for releasing money to these folks. At a minimum, that's what the statute does. So we're dealing with a non-self-executing agreement that has been executed. And your whole brief was just all about non-self-executing agreements and didn't ever grapple with the fact that it was executed. And what seems to me a difficult question here is, and it's hard to tell a whole lot from the Supreme Court's decision in Mellon, what 2668A does when there's an agreement that it executes? Is it just this appropriation authorization, or does it somehow incorporate substantive when it talks about claims due by the Secretary of State? Does it somehow bring the agreement into 2668A? Because Mellon was confusing. The statute said pay Company X, and the Supreme Court said, well, you have to pay Company Y. So there should be some interpretive stuff going on there. So one, I'm trying to figure out how your arguments map onto what I think is the proper legal framework. And then the second question is, if we bring it all in, then presumably that would bring in the exclusive review. But if we don't bring it in, then it doesn't bring in the exclusive review position, and then we're trying to discern from Mellon how much review of what the Secretary did is allowed. Your Honor, we don't think that 2668A incorporates the substantive terms of this agreement, and we think SLUS is a very helpful case on this point, because there you had the statute, the Transfer Act, that was enacted three months after the United States entered into this treaty with Canada. It specifically referred to the types of treaties that were at issue, and it imposed relatively detailed standards for how those agreements should be complied with. And I think that is not at all what we have here. 2668A was a part of the State Department's organic statute enacted in the 1800s. I believe, and it doesn't say at all in its terms, that it intends to incorporate the substantive standards of any international agreement that thereafter is entered into. And I think it's helpful to take a step back and think through some of the context. Well, so then it doesn't carry forward the preclusion of, or the exclusive review provision either. It doesn't give effect to that either as part of it. I mean, it certainly gives effect to the agreement, at least in making lawful the distributions that the agreement authorizes, and only those that are due under the agreement. So at least that much is brought in. But I guess the government's position is that even though it brings in the ability to make payments, there must be someone to whom payments are due, and the Secretary of State determines it, it brings that part in, but it does not bring in the review provisions, exclusive review? Your Honor, it's our contention that it doesn't bring in any of those substantive standards, and it has to the dispute resolution provision. I just think that's independent evidence that the agreement itself is not somehow afforded a domestically enforceable law. And I think context is helpful here. The United States and the State Department regularly enters into these types of claim settlement agreements. It's done so recently with respect to Sudan, with respect to Libya, with respect to Iraq. And in some of those cases, Congress has, after those agreements are entered into, enacted specific statutes that implement those agreements, that impose additional procedural requirements on the State Department in undertaking to comply with its commitments. So the Sudan Claims Resolution Act is an example of that. And that's just not the case. That's not what we have here. Congress is aware of this agreement with France, and they've not enacted a statute that imposes those kinds of constraints on the State Department's exercise of it. So how do we think about this agreement? Because if there were no legislation at all, it's non-self-executing. No one seems to disagree about that. And it seems that clearly from the face. And now you have a statute that has certainly executed it a little bit. And I wasn't sure of how. I had always thought either you had three options, self-executing, non-self-executing, and no legislation, or non-self-executing but then executed by legislation. And it sounds to me like you're saying there's door number four, which is non-self-executing but a little bit executed by legislation. Is that what we would have to find? Your Honor, I don't think necessarily. I think a statute like 2668A shows that the president might have the power to create a domestically enforceable law via this agreement if he chose to do that. But I think, as Your Honor mentioned, the terms of this agreement make clear that it is not to be imported. Sorry, I'm misunderstanding you something. You think 2668A authorizes the president to create domestic law? Your Honor, to be more precise, I think as an example, if the State Department had chosen in this case to promulgate notice and comment regulations that said here is how we plan to distribute the funds, here is the criteria we plan to use, then we think plaintiffs could bring a claim that said the State Department violated those regulations because those would be pursuant to the State Department's statutory authority to create rules, and then the plaintiffs could then allege that that was an APA challenge to that. Correct, Your Honor. But if they wanted to bring an APA challenge to the notice provision, if it's just something you don't offer it in Braille or something for people who have visual disability, that they might be able to, that they could do. That's correct, Your Honor. The Federal Register notices that are referred to in the plaintiff's brief were pursuant to the Paperwork Reduction Act. So if plaintiffs were alleging, for example, that the State Department had violated that statute, that is an existing part of domestic law. If there are no further questions, Your Honor, we ask that this Court affirm. Thank you. Mr. Schreiber, we'll give you two minutes. Just two minutes more. First, it appears in the discussion here today that at the main issue that we presented in our briefs, the status of this agreement under domestic law in light of Section 2668A. And as Your Honor was discussing before, the question really is what happened to this agreement in light of that statute. One way to look at it is that it became executed, became a fully executed agreement. But that is not the only way to look at it. It could still remain non-self-executing, but subject to APA review. That is, these are essentially the same issue, the same result would happen in terms of our clients' beliefs being sought, that APA review would be available. So I don't think that there is a fundamental difference between the two ways to articulate what happened to this agreement as a result of this statute. I'm sorry, so just to be clear, your reading is that 2668A domesticated this agreement enough that it's subject to APA review? Correct, Your Honor. That is exactly what we are doing here. And what did 2668A suggest? Well, 2668A provides the State Department to allocate funds in accordance with these international agreements. It doesn't say in accordance with the agreements at all. That would help you understand. It forms the criteria that it develops. Well, just as the Secretary will decide what to do. I'm sorry? The Secretary will decide what to do to which claimants. Yes, subject to whatever limitations it may have under the agreement or under the law. Now, did you really make that argument and you agree? Yes, Your Honor. We made that argument. You did? The 2668A makes the APA... Well, it implements it. Domesticates. Domesticates it in the sense that at least it authorizes payments as our Constitution requires. But I didn't see you argue that 2668A makes... I don't mean to step on your question, but if that's what makes the APA operative. I think that is essentially the argument we're making. That statute together with the State Department's actions in implementing it allows for APA review. That I think is the essence of what we've stated in our briefs and here this morning. Now, I just would like to let you judge Francis. You asked me if there is any authority on this specific pattern and it was difficult to find such authority. But there is a district court case which specifically, I think squarely, points out the issue here. And I would just like to mention it here. It's from the District of Michigan. It's not from this circuit. Lake Pilots Association, Inc. versus U.S. Coast Guard. 2013 West Claude, 543-5048. Eastern District, Michigan, September 30th, 2013. Is that in your brief? It's not in our brief. Sorry. It's not in our brief. And the district court there points out there was also an executive agreement between Canada and the United States. And the government there, like here, argued that the agreement itself was not quite a positive action. And the district court ultimately didn't pull on the issue. But it pointed out that Nicaragua and Del Toro, which the government there relied upon, like it does here, may not be applicable in that case because there is some sort of statutory source. And that mentioned the statute there. And that statute is similar to the statute we have here. It is very narrow. It doesn't give much. Unlike in Sloss, it's not a very elaborate statute, basically a labeling statute, an authorizing statute. It provides little in terms of the substantive standards that the court would have ruled on. Again, the court ultimately didn't rule on it. It mentioned the complexity and how Nicaragua may not be applicable in that type of situation. And it's very similar to the case here. Maybe you should send that in through a 28-J letter. I will do that. Thank you very much, Dan, for your attendance. We would ask the court to reverse their amendment for further proceedings. Thank you very much. Thank you. The case is submitted.
judges: Millett, Katsas, Sentelle